**MARY E. RING v. CITY DRY CLEANERS, INC.**

12 So. (2nd) 593                                    January Term, 1943
March 23, 1943                                                En Banc

*Ray M. Watson* and *Alfred E. Raia,* for appellant.
*McKay, Dixon & DeJarnette,* for appellee.

THOMAS, J.:

It seems needless, in order to render a decision in this appeal, either to analyze the pleadings on which the trial was conducted or to digest the facts upon which the judge based his instruction to return a verdict for the defendant. In taking this attitude we are prompted somewhat by the circumstances that the appellant presents a point for determination by way of challenge to an order sustaining a demurrer to proposed counts of a declaration, while the appellee bases his statement of the matter in controversy to some degree on the facts developed at the trial. At any rate, their theories converge in the formation of the question, which we will state in the abstract, whether a rule promulgated by the Florida Dry Cleaning and Laundry Board may alter, or even influence, the fundamental principles of the liability for tort or the established law on the relationships of principal and agent, master and servant and independent contractor.

The board was created by Chapter 17894, infra, and given certain powers including the one to make rules necessary to accomplish the purposes of the act. Generally, the legislation was designed "to protect the health, safety, morals and welfare of the public at large" and "to preserve the economic stability of the . . . industry." Section 1, Chapter 17894, Laws of Florida, Acts of 1937, Section 515.01, Florida Statutes, 1941.

In her suit the appellant sought recovery from the appellee for damage caused by what is known to the trade and defined by rule of the board as a "Bob-tail driver." It is her contention that she should have prevailed because of a regulation of the board which we will now analyze. It consists of two parts. The first defines as a "Bob-tail driver" a person who collects and delivers laundry "without being under the complete control and supervision as an employee of the plant proprietor or owner processing such work, but in fact operating in whole or in part *under conditions similar to that of an*

*independent contractor . . ."* and provides that any one in this classification shall pay certain licenses and shall be enttiled to have laundry processed at wholesale prices. The second part of the rule seems to deal with an unrelated subject. It inhibits any owner, proprietor or manager from permitting any person to operate a vehicle for the collection or delivery of laundry "in the trade name or similar name of the owner or proprietor" unless such owner, proprietor or manager *"shall have complete control and supervision* of such operator of such . . . vehicle . . . and accepts full responsibility for all acts of the operator . . . *as a bona fide employee."* Summarizing, the first section refers to licenses to be paid by so-called "Bob-tail" drivers and charges to them for work done; the second section pertains to the responsibility placed on the operator of a laundry for the act of any person in its service and using its name or a similar one. There is another distinction between the two portions of the rule, namely, one refers to independent contractors; the other to employees. (Italics in this paragraph, ours).

From the record and her brief it appears that the appellant takes the rather unusual position that she was injured by a "Bob-tail driver" likened in the first part of the rule to an independent contractor, but that under the latter portion the laundry, for which he currently collected and distributed, became responsible for the injury because he was its employee. This position is not sound for the reason that the two sections of the rule treat of subjects apparently unconnected and, as she attempts to apply them, are inconsistent. If the driver who caused the injury was an independent contractor the appellee would not be responsible. On the other hand, if he was an employee a different rule would obtain. We shall not, however, because of this discrepancy, avoid a decision of the question as we have originally stated it.

The Florida Dry Cleaning and Laundry Board could not, by the adoption of a rule, change the law which recognizes a marked distinction in the liability of an independent contractor, a principal, a master and an employer. Even if the rule were given the interpretation claimed by the appellant

it could not therefore, be utilized to bolster her case. A study of the title of the Act, Chapter 17894, supra, and Section 1 giving the motive of the Legislature in passing it, convinces us that there was no intention on the part of that body to delegate to the board the authority to promulgate regulations that would have the effect of changing established law governing the relationships to which we have referred, even if that could be done without violating the provisions of the Constitution. Richardson v. Baldwin, 124 Fla. 233, 168 So. 255.

When the rule is read in the light of the title and the announced purposes of the legislation, it is plain that it was adopted with the idea of fixing: (1) the license tax and charges to be paid by a "Bob-tail driver" and (2), the responsibility of launderers to the public in matters where both are concerned. Any regulation of the board must, to be valid, be restricted to the field of operation of launderers for their own and the public good.

Such authority as is given the board to adopt rules to effectuate the purposes of the act could not disturb the long established principles of the law of torts. Litigation growing out of injury caused by the driver of an automobile would be adjudicated in accordance with controlling law and the liability for damage would be placed on the person responsible wholly in disregard of such rules. Thus, the liability for damage to the appellant should be determined on the basis of the relationship between the appellee and the driver of the car causing the injury despite the rule from which we have generously quoted.

This conclusion on our part results in affirmance of the judgment entered in favor of the original defendant, appellee.

Affirmed.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN and SEBRING, JJ., concur.

ADAMS, J., dissents.

ADAMS, J., dissenting:

In my opinion, when the laundry permitted the driver to carry its name, the effect was to alter the relationship of the

parties and then the existing law of torts governed the liability of the laundry. In other words, the rule adopted did not change the law of torts. Liability in tort must depend and arise out of the relationship of the parties. That relationship can be fixed by law, express agreement or conduct of the parties.